**No. 26-20133**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

In the Matter of Galleria 2425 Owner, L.L.C.,
*Debtor*

2425 WL, L.L.C.,
*Appellant*,

*v.*

Christopher Murray,
*Appellee*.

---

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division
4:24-CV-3834

---

# BRIEF OF APPELLANT 2425 WL, L.L.C.

---

Michael Sankey
Michael Sankey, PLLC
Texas State Bar No. 24097156
1725 Hughes Landing Blvd., 11th Floor
P.O. Box 9281
The Woodlands, Texas 77387
(832) 885-9030
michael@texesquire.com

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| | |
|---|---|
| **Appellee:** | **Counsel for Appellee:** |
| Christopher Murray | R. J. Shannon of Shannon & Lee, L.L.P. Houston, TX |
| **Appellant:** | **Counsel for Appellant:** |
| 2425 WL, L.L.C. | Michael Sankey of Michael Sankey, P.L.L.C. The Woodlands, TX |

*/s/Michael Sankey*
Michael Sankey
**Attorney of record for**
**Appellant 2425 WL, L.L.C.**

## STATEMENT REGARDING ORAL ARGUMENT

Appellant waives oral argument. The controlling law and facts stated herein are well settled and it is unlikely that oral argument will be helpful to this Court for its consideration of this matter. However, if this Court were to order oral argument, Appellant would respectfully participate.

# TABLE OF CONTENTS

Contents Page(s)

CERTIFICATE OF INTERESTED PERSONS .................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

TABLE OF CONTENTS ..........................................................................iv

TABLE OF AUTHORITIES.........................................................................1

JURISDICTIONAL STATEMENT ..........................................................4

STATEMENT OF THE ISSUES ..........................................................5

STATEMENT OF THE CASE ..........................................................5

SUMMARY OF THE ARGUMENT.....................................................10

ARGUMENT ..........................................................................11

I. Standard of Review.....................................................................11

II. The bankruptcy court erred by disallowing 2425 WL, LLC's claim where the claim was previously disallowed by the bankruptcy court's confirmation of the plan and the district court erred by affirming the disallowance.....................11

III. The bankruptcy court erred when it held 2425 WL, LLC's Claim No. 7 was false and the underlying deed of trust fraudulent. .......................................18

CONCLUSION ....................................................................................................29

CERTIFICATE OF SERVICE...........................................................................30

CERTIFICATE OF COMPLIANCE ...............................................................31

# TABLE OF AUTHORITIES

**Cases……………………………………………………………………Pages(s)**

*ALCOA v. Hydrochem Indus. Servs.*,
No. 13-02-00531-CV, 2005 Tex. App. LEXIS 2010
(Tex. App.—Corpus Christi Mar. 17, 2005, pet. denied)…………………………..26

*Bayou Liberty Ass'n v. U.S. Army Corps of Eng'rs*,
217 F.3d 393 (5th Cir. 2000)…………………………………………………....11

*Calderon v. Moore*,
518 U.S. 149 (1996)……………………………………………………...12, 16

*Campanioni v. Barr*,
962 F.2d 461 (5th Cir. 1992)…………………………………………………....12

*Carrieri v. Jobs.com Inc.*,
393 F.3d 508 (5th Cir. 2004)…………………………………………………....11

*Chevron U.S.A., Inc. v. Traillour Oil Co.*,
987 F.2d 1138 (5th Cir. 1993)…………………………………………………..12

*Cromwell v. Cty. of Sac*,
94 U.S. 351 (1876)……………………………………………………....13, 16-17

*Eubanks v. FDIC*,
977 F.2d 166, 170 (5th Cir. 1992)……………………………………………...12, 15

*Gulf Oil Corp. v. Spence & Howe Constr. Co.*,
356 S.W.2d 382 (Tex. Civ. App.—Houston 1962),
*overruled in part on other grounds,*
*Ethyl Corp. v. Daniel Constr. Co.*,
725 S.W.2d 705 (Tex. 1987)…………………………………………………....26

*Hinkley v. Envoy Air, Inc.*,
968 F.3d 544 (5th Cir. 2020)…………………………………………………....12

*In re Energytec, Inc.*,

739 F.3d 215 (5th Cir. 2013)……………………………………………………....11

*Johnson v. Snell*,
504 S.W.2d 397 (Tex. 1973)……………………………………………………....26

*Libertarian Party v. Dardenne*,
595 F.3d 215 (5th Cir. 2010)……………………………………………………....11

*McGoodwin v. McGoodwin*,
671 S.W.2d 880 (Tex. 1984)……………………………………………………....23

*Miller v. Meinhard-Com. Corp.*,
462 F.2d 358 (5th Cir. 1972)…………………………………………………...12, 15

*New Falls Corp. v. LaHaye (In re LaHaye)*,
17 F.4th 513 (5th Cir. 2021)…………………………………………………...12, 15

*Norriss v. Patterson*,
261 S.W.2d 758 (Tex. Civ. App.—Fort Worth 1953, *writ ref'd n.r.e.*)…………….26

*Official Comm. v. Walker Cty. Hosp. Dist. (In re Walker Cty. Hosp. Corp.)*,
3 F.4th 230 (5th Cir. 2021)……………………………………………………...11

*Petri v. Kestrel Oil & Gas Props., L.P.*,
878 F. Supp. 2d 744 (S.D. Tex. 2012)……………………………………….25-26

*Republic Supply Co. v. Shoaf*,
815 F.2d 1046 (5th Cir. 1987)…………………………………………………..12

*Scruggs v. Lowman (In re Scruggs)*,
392 F.3d 124 (5th Cir. 2004)……………………………………………………....12

*Successors in Interest of Rea-Glass, Inc. v. Allied Corp.*,
704 S.W.2d 387 (Tex. App.—Houston [1st Dist.] 1985, *writ ref'd n.r.e.*)………....26

*Song v. 4170 & 4231 & 4271 Altoona Drive Holdings Ltd. P'ship*,
616 F. App'x 645 (5th Cir. 2015)………………………………………………….28

*Texas Farm Bureau Cotton Ass'n v. Stovall*,
113 Tex. 273, 253 S.W. 1101 (Tex. 1923)………………………………………....28

*United Indep. Sch. Dist. v. Vitro Asset Corp. (In re Vitro Asset Corp.)*,
656 F. App'x 717 (5th Cir. 2016)……………………………………………12

*White, Smith & Baldwin v. Downs*,
40 Tex. 225 (1874)…………………………………………………………...23

**Statutes……..…………………………………………………………Pages(s)**

11 U.S.C. § 1141…………………………………………………..10, 12, 15, 17

11 U.S.C. § 1142…………………………………………………...13, 14, 17

11 U.S.C. § 1329……………………………………………………....17, 18

11 U.S.C. § 1330…………………………………………………………..17

28 U.S.C. § 157……………………………………………………………...4

28 U.S.C. § 158……………………………………………………………...4

TEX. PROP. CODE § 5.079………………………………………………..23

**Rules…………………………..……………………………………………Pages(s)**

FED. R. APP. P. 25……………………………………………………………30

FED. R. APP. P. 32……………………………………………………………31

5TH CIR. R. 32…………………………………………………………...31

5TH CIR. R. 28……………………………………………………………ii

**Other……….……………………………………………………………Pages(s)**

8 COLLIER ON BANKRUPTCY P 1142.03 (16TH 2026)………………………………14

# JURISDICTIONAL STATEMENT

The bankruptcy court had jurisdiction over this matter under 28 U.S.C. § 157(b). Specifically, the debtor in this matter filed a voluntary petition for relief under Chapter 11 of Title 11, U.S.C. The Order Disallowing Proof of Claim and Referral to United States Attorney is a core proceeding arising under Title 11, U.S.C. The district court had jurisdiction over the appeal from the bankruptcy court under 28 U.S.C. § 158(a). This Court has jurisdiction over this appeal from the district court under 28 U.S.C. § 158(d).

## STATEMENT OF THE ISSUES

I. Standard of Review.

II. The bankruptcy court erred by disallowing 2425 WL, LLC's claim where the claim was previously disallowed by the bankruptcy court's confirmation of the plan and the district court erred by affirming the disallowance.

III. The bankruptcy court erred when it held 2425 WL, LLC's Claim No. 7 was false and the underlying deed of trust fraudulent.

## STATEMENT OF THE CASE

On December 5, 2023, Galleria 2425 Owner, LLC filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "bankruptcy court"). ROA.136. The underlying basis of this appeal and petition for relief under chapter 11 is a transaction involving the sale and purchase of real property located at 2425 West Loop S, Houston, TX (the "Property"). ROA.136, 263.

*Organizational Structure of Purchase and Sale of the Property*

2425 WL, LLC owned and was the seller of the Property. ROA.391. Galleria 2425 Owner, LLC was the buyer of the property. ROA.263, 391. Galleria 2425 Owner, LLC was registered as a foreign limited liability company on April 5, 2018.

ROA.5786. The Application for Registration of a Foreign Limited Liability Company states Galleria 2425 Owner, LLC was formed under the laws of Delaware on April 4, 2018. ROA.5786. The Application for Registration of a Foreign Limited Liability Company states Galleria 2425 JV, LLC is the governing organization of Galleria 2425 Owner, LLC. ROA.5787.

Galleria 2425 JV, LLC was registered as a foreign limited liability company on April 5, 2018. ROA.5792. The Application for Registration of a Foreign Limited Liability Company states Galleria 2425 JV, LLC was formed under the laws of Delaware on April 4, 2018. ROA.5792. The Application for Registration of a Foreign Limited Liability Company states Naissance Capital Real Estate, LLC is the governing organization of Galleria 2425 JV, LLC. ROA.5793. The membership schedule of Galleria 2425 JV, LLC states that Naissance Capital Real Estate, LLC is the managing member and Galleria West Loop Investment II, LLC is a member. ROA.5842. The membership interest percentages are 1.23% and 98.77%, respectively. ROA.5843. Azeemeh Zaheer had the authority to act on behalf of Galleria 2425 JV, LLC which was the governing organization of Galleria 2425 Owner, LLC. ROA.7288. That authority changed on January 18, 2021, when the Galleria West Loop Investment II LLC became the managing member of Galleria 2425 JV, LLC by unanimous consent. ROA.382. The unanimous consent effectively

gave Ali Choudhri the authority to act on behalf of the Galleria 2425 Owner, LLC. ROA.148.

*Financing of Purchase and Sale of the Property*

On the buyer side of the settlement statement, the sale price of the Property was $79,500,000.00 (Line 101). ROA.395. In addition to the sale price, there were settlement charges owing from the borrower, Galleria 2425 Owner, LLC, totaling $3,369,209.67 (Line 103). ROA.395. The sale price and settlement charges to be paid by Galleria 2425 Owner, LLC totaled $82,869,209.67 (Line 120). ROA.395. Galleria 2425 Owner, LLC had loans and other items to cover a portion of the total amount due in the sum of $68,138,877.29 (Line 220). ROA.395. This amount was short of the total due from borrower (Line 120) in the amount of $14,730,332.38 which represents the "Cash from Borrower" amount on Line 303. ROA.395.

On the seller side of the settlement statement, the seller, 2425 WL, LLC was to receive $79,500,000.00 for the sale of the property (Line 420). ROA.391. From this amount there is a list of items reducing this amount including existing loans, settlement charges, taxes, and a "Seller Credit to Buyer" all totaling $65,779.745.85 (Line 520). ROA.391. This left $13,720,254.15 in "Cash to Seller" (Line 603). ROA.391. The "Seller Credit to Buyer" was the same amount that the buyer, Galleria 2425 Owner, LLC, was short from the total charges (Line 303). ROA.391, 395.

*2425 WL, LLC Claim 7*

On March 31, 2024, 2425 WL, LLC filed Claim No. 7 with the Court asserting a claim in the amount of $22,968,231.58 secured by a lien on the Property. ROA.555. The basis for the claim was a Deed of Trust. ROA.556. The claim consisted of a principal amount of $14,780,332.38 plus accrued interest for a total amount of $22,968,231.58. ROA.558. Ali Choudhri signed Claim No. 7 as 2425 WL's manager. ROA.557. The Deed of Trust referred to in Claim No. 7 was dated March 23, 2018, from Galleria 2425 Owner, LLC, as Grantor, to 2425 WL, LLC, as Lender. ROA.161. The principal amount was $14,780,332.38. ROA.161. Ali Choudhri signed the Deed of Trust in 2021 as Manager of Galleria West Loop Investments II, LLC, the managing member of Galleria 2425 JV, LLC, the managing member of Galleria 2425 Owner, LLC. ROA.168.

The trustee filed a Trustee's Objection to Claim No. 7 of 2425 WL, LLC on June 3, 2024. ROA.144. Therein, the trustee argued that the deed of trust and promissory note were fraudulent because they were either created in 2021 based on a non-existent debt or were executed by Ali Choudhri without authority. ROA.150.

A Chapter 11 Plan of Liquidation of the Debtor by National Bank of Kuwait S.A.K.P., New York Branch was proposed on April 10, 2024. ROA.479. Therein, the plan defined a "disallowed claim" as "a Claim, or any portion thereof, that is

Disallowed." ROA.482. The plan also stated that insider claims were effectively disallowed. "On the Effective Date, all Insider Claims shall be canceled and extinguished. Holders of Class 6 Insider Claims shall not receive or retain any property under the Plan on account of such Claims." ROA.490.

2425 WL, LLC's claim is listed as an insider claim. ROA. 483-484. On June 22, 2024, the bankruptcy court signed the Order Confirming Chapter 11 Plan of Liquidation of the Debtor by National Bank of Kuwait, S.A.K.P. New York Branch. ROA.1900. The order confirming the plan stated it was a final appealable order. ROA.1906.

Thereafter, the bankruptcy court signed the Order Disallowing Proof of Claim and Referral to United States Attorney on September 9, 2024. ROA.15. Therein, the bankruptcy court held that Claim No. 7 was false and the Deed of Trust underlying the claim was fraudulently created. ROA.14. The bankruptcy court denied a motion to reconsider on September 24, 2024. ROA.19. A notice of appeal to the district court was filed on October 9, 2024. The district court affirmed the order on February 25, 2026. ROA.4781, 7388. Lastly, a notice of appeal to this Court was filed on March 23, 2026. ROA.7389.

## SUMMARY OF THE ARGUMENT

The bankruptcy court erred when it disallowed 2425 WL, LLC's Claim No. 7 after the bankruptcy court confirmed the Chapter 11 plan which had already disallowed the Claim No. 7. Under 11 U.S.C. § 1141, a confirmed plan binds all creditors and constitutes a final judgment. 2425 WL, LLC's Claim No. 7 was expressly classified and disallowed as an insider claim in the confirmed plan. The bankruptcy court's subsequent post-confirmation order disallowing the same claim on new fraud grounds was therefore moot, duplicative, and ineffectual. Therefore, this Court should reverse the order disallowing Claim No. 7.

Alternatively, even if the post-confirmation disallowance was not moot, the bankruptcy court erred in finding that Claim No. 7 was false and its underlying deed of trust was fraudulent. Claim No. 7 arose from a "Seller Credit to Buyer" reflected in the settlement statement that created a vendor's lien under Texas law. After gaining control of Galleria 2425 Owner, LLC, the borrower and debtor, 2425 WL, LLC validly executed the deed of trust to memorialize that pre-existing lien. There was adequate consideration because 2425 WL, LLC forwent immediate payment of the credited amount in exchange for the Galleria 2425 Owner, LLC's promise to pay. The bankruptcy court's contrary findings were based on a misunderstanding of

the settlement statement and an erroneous application of Texas law. Accordingly, this Court should reverse the order disallowing Claim No. 7.

## ARGUMENT

### I. Standard of Review

This court "reviews the decision of a district court, sitting as an appellate court, by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *In re Energytec, Inc.*, 739 F.3d 215, 218 (5th Cir. 2013) (*quoting Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 517 (5th Cir. 2004)). Findings of fact are reviewed for clear error, and questions of law are reviewed de novo. *Official Comm. v. Walker Cty. Hosp. Dist. (In re Walker Cty. Hosp. Corp.)*, 3 F.4th 230, 233-34 (5th Cir. 2021). Mixed questions of law and fact are reviewed de novo. *Id.* at 234.

### II. The bankruptcy court erred by disallowing 2425 WL, LLC's claim where the claim was previously disallowed by the bankruptcy court's confirmation of the plan and the district court erred by affirming the disallowance.

Whether a case is moot is a question of law that this Court reviews de novo. *Bayou Liberty Ass'n v. U.S. Army Corps of Eng'rs*, 217 F.3d 393, 396 (5th Cir. 2000); *Libertarian Party v. Dardenne*, 595 F.3d 215, 217 (5th Cir. 2010). "Article III's 'case or controversy' requirement permits federal courts to adjudicate only live disputes—a party must retain a 'legally cognizable interest in the outcome' of an

issue, or its resolution is moot." *Hinkley v. Envoy Air, Inc.*, 968 F.3d 544, 548 (5th Cir. 2020) (*quoting Campanioni v. Barr*, 962 F.2d 461, 464 (5th Cir. 1992)). "A controversy becomes moot where, as a result of intervening circumstances, there are no longer adverse parties with sufficient legal interest to maintain the litigation." *Scruggs v. Lowman (In re Scruggs)*, 392 F.3d 124, 128 (5th Cir. 2004) (*quoting Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1153 (5th Cir. 1993)). If an intervening event renders the court unable to grant the litigant "any effectual relief whatever," the case is moot. *Calderon v. Moore*, 518 U.S. 149, 150 (1996).

In Bankruptcy, "[u]nless stated otherwise, a bankruptcy plan takes effect upon confirmation." 11 U.S.C. § 1141; *New Falls Corp. v. LaHaye (In re LaHaye)*, 17 F.4th 513, 516 (5th Cir. 2021). A confirmed plan binds the debtor and any creditor and has a binding effect on subsequent proceedings involving the same debt. 11 U.S.C. § 1141; *Eubanks v. FDIC*, 977 F.2d 166, 170 (5th Cir. 1992); *Miller v. Meinhard-Com. Corp.*, 462 F.2d 358, 360 (5th Cir. 1972); *New Falls*, 17 F.4th at 517-18. A bankruptcy court's order confirming a plan can constitute a final judgment on the merits that is appealable. *United Indep. Sch. Dist. v. Vitro Asset Corp. (In re Vitro Asset Corp.)*, 656 F. App'x 717, 724 (5th Cir. 2016); *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1053 (5th Cir. 1987). For the proposition that a confirmed plan binds the debtor and any creditor, the cases point back to *Cromwell*, wherein the Supreme Court discussed of the treatment of a claim that has been confirmed:

> Thus, for example, a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defences actually existed, of which no proof was offered, such as forgery, want of consideration, or payment. If such defences were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence. The judgment is as conclusive, so far as future proceedings at law are concerned, as though the defences never existed. The language, therefore, which is so often used, that a judgment estops not only as to every ground of recovery or defence actually presented in the action, but also as to every ground which might have been presented, is strictly accurate, when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever.

*Cromwell v. Cty. of Sac*, 94 U.S. 351, 352-53 (1876). Of course, statute gives the bankruptcy court the power to issue orders for plan implementation. The bankruptcy code states, "[t]he court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan." 11 U.S.C. § 1142(b). Some of these actions include orders compelling:

> (1) lenders to execute and deliver loan documents required under the plan, clarify provisions of loan documents in accordance with the terms of the plan and supply commercially reasonable terms and conditions to loan documents where such terms were not otherwise addressed;
>
> (2) execution of documents extinguishing a lien that is released by the plan;

> (3) an investor to advance committed funds necessary to consummate the plan;
>
> (4) a change in corporate control or governance;
>
> (5) distributions on claims as required by the plan;
>
> (6) principals of the debtor to submit to examinations under Bankruptcy Rule 2004 to determine the extent to which they have acted in conformance with the plan; and
>
> (7) execution of instruments enabling asset transfers, enforcement mechanics or other agreements contemplated by the plan.
>
> In addition to directing parties to take actions, the court may order parties to refrain from taking actions if those actions interfere with implementation of the plan.

8 Collier on Bankruptcy P 1142.03 (16th 2026); 11 U.S.C. § 1142(b).

In this matter a Chapter 11 Plan of Liquidation of the Debtor by National Bank of Kuwait S.A.K.P., New York Branch was proposed on April 10, 2024. ROA.479. Therein, the plan defined a "disallowed claim" as "a Claim, or any portion thereof, that is Disallowed." ROA.482. The plan also stated that insider claims were effectively disallowed. "On the Effective Date, all Insider Claims shall be canceled and extinguished. Holders of Class 6 Insider Claims shall not receive or retain any property under the Plan on account of such Claims." ROA.490.

2425 WL, LLC's claim is listed as an insider claim. ROA. 483-484. Therefore, 2425 WL, LLC's claim is a disallowed claim under the plan. On June 22, 2024, the bankruptcy court signed the Order Confirming Chapter 11 Plan of Liquidation of the Debtor by National Bank of Kuwait, S.A.K.P. New York Branch. ROA.1900. The order confirming the

plan stated it was a final appealable order. ROA.1906 ("The period in which an appeal with respect to this Confirmation Order must be filed shall commence immediately upon the entry of this Confirmation Order.").

On June 3, 2024, the Trustee filed a Trustee's Objection to Claim No. 7 of 2425 WL LLC. ROA.144. Therein the Trustee asked the bankruptcy court to disallow Claim No. 7 in its entirety. ROA. 1607. On September 9, 2024, the bankruptcy court sustained the Trustee's objection and disallowed Claim 7-2 in its entirety. ROA.13. The district court affirmed this order. "[T]he Court find and holds that the Disallowance Order was correctly entered." ROA.4781.

Here, the bankruptcy court disallowed 2425 WL, LLC's Claim No. 7 after it had already been disallowed by the confirmation of the plan. The bankruptcy court confirmed the plan on June 22, 2024, and disallowed 2425 WL, LLC's Claim No. 7 on September 9, 2024. The order confirming the plan constituted a final appealable order, by the order's own terms and this Court's case law, well before the bankruptcy court again ordered 2425 WL, LLC's Claim No. 7 disallowed. As such, 2425 WL, LLC's Claim No. 7 had been litigated, and all parties were bound by the order confirming the plan. 11 U.S.C. § 1141; *Eubanks*, 977 F.2d at 170; *Miller*, 462 F.2d at 360; *New Falls*, 17 F.4th at 517-18. By September 9, 2024, the matter was moot because the confirmation of the plan where 2425 WL, LLC's Claim No. 7 was disallowed rendered the bankruptcy court without the ability to grant the trustee "any

effective relief whatever." *Calderon*, 518 U.S. at 150. Its subsequent order disallowing 2425 WL, LLC's Claim No. 7 was duplicative and ineffectual after the bankruptcy court confirmed the plan. Therefore, the issue was moot upon the bankruptcy court's confirmation of the plan.

Moreover, the reason for disallowing 2425 WL, LLC's Claim No. 7 changed from the order confirming the plan to the order disallowing Claim No. 7. In the plan, 2425 WL, LLC's Claim No. 7 was disallowed because it was identified as an "insider claim." ROA. 483-484. In the trustee's objection, the trustee alleged the deed of trust underlying 2425 WL, LLC's Claim No. 7 was fraudulent. ROA.150. The bankruptcy court should not have disallowed Claim No. 7 in September based upon the allegation of fraud because the reasons for disallowance had been confirmed with the plan and according to the Supreme Court, a "demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever." *Cromwell*, 94 U.S. at 352-53. Here, Claim No. 7 passed into judgment when the bankruptcy court confirmed the plan, therefore its disallowance should not have been brought back into the proceedings, especially where, as here, the reason for the claim's disallowance changed after confirmation of the plan. "If such defences were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence." *Cromwell, 94 U.S. at 352-53.*

Also, it cannot be argued that the disallowance was part of the bankruptcy court's ongoing power to issue orders for plan implementation. In his motion to disallow the 2425 WL, LLC's Claim No. 7, the trustee's motion to disallow a claim that had already been disallowed through confirmation of the plan does not assist with the plan's implementation and does not serve any purpose. For example, it does not serve any purpose outlined *supra*. Since Claim No. 7 was disallowed as an "insider claim," disallowing it a second time has no effect on the plan, therefore the second reason for its disallowance should not have been brought before the bankruptcy court.

Lastly, the bankruptcy code does not allow for a modification of a plan after confirmation in Chapter 11 like in Chapter 13. The statutory scheme for Chapter 11 provides that a confirmed plan is binding and a bankruptcy court may issue orders to assist in the plan's implementation or revoke the order of confirmation. U.S.C. § 1141, 1142, 1144. Unlike Chapter 11, the code under Chapter 13 allows for either the modification of a plan after confirmation or the revocation of an order of confirmation. 11 U.S.C. § 1329, 1330. Even if there were a comparable section under Chapter 11, the reasons to modify the plan under Chapter 13 are inapplicable here:

> At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
> (2) extend or reduce the time for such payments;
>
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or
>
> (4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor

11 U.S.C. § 1329(a). None of these allow for a claim that has been disallowed by the plan to be disallowed again for a different reason by the bankruptcy court after plan confirmation.

For these reasons the bankruptcy court erred when it ordered 2425 WL, LLC's Claim No. 7 disallowed after confirming the plan and the district court erred when it affirmed the bankruptcy court's order. Therefore, this Court should reverse the bankruptcy court's order disallowing 2425 WL, LLC's Claim No. 7 in its entirety.

## III. The bankruptcy court erred when it held 2425 WL, LLC's Claim No. 7 was false and the underlying deed of trust fraudulent.

Alternatively, if this Court were to find that the disallowance of 2425 WL, LLC's Claim No. 7 after the plan confirmation was not moot, then 2425 WL, LLC's Claim No. 7 was not false and the underlying deed of trust was not fraudulent where the amount of the claim was the product of a credit given to Galleria 2425 Owner, LLC that evidences a vendor's lien under Texas law, Ali Choudhri had the authority

to execute the deed of trust on behalf of Galleria 2425 Owner, LLC to memorialize the lien, and there was consideration for the deed of trust.

### A. The bankruptcy court misunderstood the settlement statement where it concluded 2425 WL, LLC could not receive cash and have a lien on the property.

Part of the bankruptcy court's order disallowing 2425 WL, LLC's Claim No. 7 held that 2425 WL, LLC could not have received cash for the transaction and have a lien at the same time. The relevant part of the order is below:

> As indicated by the Settlement Statement the borrower was Galleria 2425 Owner, LLC (the debtor), the Seller was 2425 WL, LLC (the claimant) and the lender was NBK. The Contract Sales Price (Line 401) is $79,500,000.00 and after payment of all outstanding debits and credits the Seller and claimant received cash of $13,720,254.15 (Line 603). The false Proof of Claim 7-2 is based on line 518 of the Settlement Statement which indicates a "Seller Credit to Buyer" of $14,730,332.38, which when netted against debits to the Buyer in the settlement statement leads to the cash payment to the Seller and claimant of $13,720,254.15. Somehow line 603 of the Settlement Statement leads the claimant to make the fanciful, and wholly false claim that the claimant who received over $13 million in cash has an additional claim against the debtor for over $14 million dollars plus accumulated interest as if it lent the debtor this sum, when it did not.

ROA.14. Here, the bankruptcy court states that it was fanciful for 2425 WL, LLC to believe that after receiving "over $13 million in cash," that it would have an additional claim against the debtor for "over $14 million" dollars. ROA.14. The bankruptcy court conflated two distinct ideas. It is entirely possible for the seller of

a property to receive cash from the sale of a property while retaining a lien on the property by way of either a vendor's lien or loan. That is what occurred in this matter.

The confusion lies in the statement by the bankruptcy court "[t]he false Proof of Claim 7-2 is based on line 518 of the Settlement Statement which indicates a "Seller Credit to Buyer" of $14,730,332.38, which when netted against debits to the Buyer in the settlement statement leads to the cash payment to the Seller and claimant of $13,720,254.15." ROA.14.

This statement does not consider the entire settlement statement. Starting with the buyer side, if you look at the portion of the settlement statement, which describes the Summary of the Borrower's transaction, the difference between Line 120, the "Gross Amount Due from Borrower, and Line 220, the "Total Paid By/For Borrower," is $14,730,332.38, which is the exact amount of the "Seller Credit to Buyer" amount at question in this matter. ROA.2229, 2232. It is important to note that the "Total Paid By/For Borrower" includes two loans, Lines 202 and 204, that when added together equal $67,775,000.00 which is short of the "Gross Amount Due from Borrower," amount of $82,869,209.67.

There had to be some type of additional funding to make up for the difference, which in this case was the "Seller Credit to Buyer." Simply put, Galleria 2425 Owner, LLC did not have enough loans to cover the entire $82,869,209.67 due to

2425 WL, LLC as the seller. In fact, Galleria 2425 Owner, LLC was $14,730,332.38 short. This shortcoming had to be paid in cash or made up in some other way which is where the "Seller Credit to Buyer" arose.

Then moving on the portion of the settlement statement that describes the "Summary of Seller's Transaction," when the "Gross Amount Due to Seller," Line 428, is reduced by the "Total Reduction Amount Due Seller," Line 520, the result is the "Cash to Seller" of $13,720,254.15, Line 603, that the bankruptcy court found was from the "Seller Credit to Buyer," of $14,730,332.38. ROA.14, 2229.

It is mathematically impossible for the "Cash to Seller" to come from the "Seller Credit to Buyer" because they are distinct items. The "Seller Credit to Buyer" amount of $14,730,332.38, Line 518, is part of the "Total Reduction Amount Due Seller," that reduces the "Gross Amount Due to Seller," which leads to the "Cash to Seller" amount. Put another way, the complained of credit to buyer is a separate and distinct amount from the cash the seller received.

Another way to prove this is if the buyer had the $14,730,332.38 in cash to make up the difference between the "Gross Amount Due from Borrower" and the "Total Paid By/For Borrower" described *supra*, then the "Seller Credit to Buyer" would not been necessary. If that were the case, then the "Total Reduction Amount Due Seller" would not have included the "Seller Credit to Buyer," resulting in an

amount that would have been $14,730,332.38 less, which would have necessarily increased the "Cash to Seller" amount by the $14,730,332.38 for a total amount of $28,450,586.53.

Therefore, it was not "fanciful" for 2425 WL, LLC to believe that after receiving "over $13 million in cash," that it would have an additional claim against the debtor for "over $14 million" dollars, as the bankruptcy court stated in its order because had it not extended the "Seller Credit to Buyer," that amount would have been immediately due to it as "Cash to Seller." ROA.14.

Accordingly, the bankruptcy court's interpretation of the settlement statement does not comport with the actual statement when the entire statement is analyzed. Therefore, the bankruptcy court erred when it found that 2425 WL, LLC's claim was false and the district court erred when it affirmed this finding.

### B. The "Seller Credit to Buyer" created a vendor's lien under Texas law.

The settlement statement establishes that the "Seller Credit to Buyer" was a separate and distinct amount from the "Cash to Seller," as argued *supra*. This credit represented a vendor's lien under Texas law because the buyer was receiving property which it had not paid for. "A recorded executory contract shall be the same as a deed with a vendor's lien. The vendor's lien is for the amount of the unpaid contract price, less any lawful deductions, and may be enforced by foreclosure sale

under Section 5.066 or by judicial foreclosure." TEX. PROP. CODE § 5.079(a). *McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex. 1984) ("Established Texas law holds that when no express lien is reserved in a deed and the purchase money is not paid, a lien nevertheless arises by implication in favor of the vendor to secure payment of the purchase money."). The concept is stated as a vendor's lien arises "by implication, as a natural equity creating a constructive trust in the vendee, that he should not keep the estate of another without paying for it." *Id.* (*citing White, Smith & Baldwin v. Downs*, 40 Tex. 225, 231 (1874)).

In this matter, Galleria 2425 Owner, LLC was $14,730,332.38 short of the "Total Reduction Amount Due Seller" but it still received the property because 2425 WL, LLC provided for the "Seller Credit to Buyer" for that amount. ROA.391. This is exactly keeping the estate of another without paying for it if a lien did not arise from this transaction. Accordingly, under Texas law a vendor's lien arose from the transaction.

### C. The Deed of Trust underlying 2425 WL, LLC's claim memorialized its lien.

Another reason the bankruptcy court articulated that 2425 WL, LLC's claim was fraudulent is that the deed of trust underlying 2425 WL, LLC's Claim No. 7 was not authorized by the company's representative on its date of execution. In its order the bankruptcy court stated:

> The actual May 23, 2018, transactions were authorized and signed by Azeemeh Zaheer ("Zaheer") in her various capacities including the representative(s) of Galleria 2425 Owner, LLC, Naissance Galleria, LLC, Naissance Capital Real Estate, Ltd, and Galleria 2425 JV, LLC. On this date she was the only person who could have authorized these transactions, and no other persons had authority to bind these entities. Zaheer appeared under subpoena and testified that the Promissory Note and Deed of Trust signed by Choudhri that are attached to the Proof of Claim 7-2 did not exist as of May 23, 2018, their purported date, and that even if they had existed, she would have been the only person authorized to enter such transactions. Choudhri had at that time no authority to sign these documents even though they purported to be signed on that date.

ROA.14. The bankruptcy court states that Zaheer was the only person had authority to bind Galleria 2425 Owner, LLC, Naissance Galleria, LLC, Naissance Capital Real Estate, Ltd, and Galleria 2425 JV, LLC on May 23, 2018. ROA.14. This is correct. Galleria 2425 Owner, LLC was registered as a foreign limited liability company on April 5, 2018. ROA.5786. The Application for Registration of a Foreign Limited Liability Company states Galleria 2425 Owner, LLC was formed under the laws of Delaware on April 4, 2018. ROA.5786. The Application for Registration of a Foreign Limited Liability Company states Galleria 2425 JV, LLC is the governing organization of Galleria 2425 Owner, LLC. ROA.5787.

Galleria 2425 JV, LLC was registered as a foreign limited liability company on April 5, 2018. ROA.5792. The Application for Registration of a Foreign Limited Liability Company states Galleria 2425 JV, LLC was formed under the laws of Delaware on April 4, 2018. ROA.5792. The Application for Registration of a

Foreign Limited Liability Company states Naissance Capital Real Estate, LLC is the governing organization of Galleria 2425 JV, LLC. ROA.5793. The membership schedule of Galleria 2425 JV, LLC states that Naissance Capital Real Estate, LLC is the managing member and Galleria West Loop Investment II, LLC is a member. ROA.5842. The membership interest percentages are 1.23% and 98.77%, respectively. ROA.5843. Azeemeh Zaheer had the authority to act on behalf of Galleria 2425 JV, LLC which was the governing organization of Galleria 2425 Owner, LLC. ROA.7288.

However, that authority changed. Azeemeh Zaheer testified at trial on September 6, 2024, that the managing member of Galleria 2425 JV, LLC changed to Ali Choudhri in January 2021. ROA.4834, 7297-7298. On January 18, 2021, Galleria West Loop Investment II LLC became the managing member of Galleria 2425 JV, LLC by unanimous consent. ROA.382. The unanimous consent effectively gave Ali Choudhri the authority to act on behalf of the Galleria 2425 Owner, LLC. ROA.148. Accordingly, all parties agree that Ali Choudhri gained control over the Galleria 2425 JV, LLC after 2021. ROA.4834. This is important because in Texas a contract can be made retroactively.

Under Texas law a contract can be made retroactive. In *Petri*, the court found that the parties to an MSA that signed an amendment to an MSA contract in 2009 intended for the contract to be retroactive to the original MSA in 2007. *Petri v.*

*Kestrel Oil & Gas Props., L.P.*, 878 F. Supp. 2d 744, 775 (S.D. Tex. 2012). *Petri* cited *Gulf Oil* for the proposition that parties to a contract can choose to apply the contract retroactively where the agreement to do so is evident on the face of the contract. *Gulf Oil Corp. v. Spence & Howe Constr. Co.*, 356 S.W.2d 382, 386 (Tex. Civ. App.—Houston 1962), *overruled in part on other grounds, Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex. 1987); *See also ALCOA v. Hydrochem Indus. Servs.*, No. 13-02-00531-CV, 2005 Tex. App. LEXIS 2010, at *10 (Tex. App.—Corpus Christi Mar. 17, 2005, pet. denied).

Further, a deed of trust is in legal effect a mortgage with power to sell on default. *Johnson v. Snell*, 504 S.W.2d 397, 399 (Tex. 1973); *Successors in Interest of Rea-Glass, Inc. v. Allied Corp.*, 704 S.W.2d 387, 389 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). A mortgage is a contract. *Norriss v. Patterson*, 261 S.W.2d 758, 761 (Tex. Civ. App.—Fort Worth 1953, *writ ref'd n.r.e.*) ("A mortgage does not pass title, but as to real estate is an executed contract pledging the title as a security for performance of an obligation by a legal or equitable owner."). Therefore, a deed of trust may be made to be retroactive. Here, it is apparent on its face that the deed of trust was intended to be retroactive to May 23, 2018, to memorialize the lien 2425 WL, LLC retained by the "Seller Credit to Buyer" in the settlement statement because that is the date of the obligation despite the execution date in 2021. ROA.391, 4883, 4890.

Accordingly, in 2021, it was not disputed that Ali Choudhri could act on behalf of Galleria 2425 JV, LLC and that a deed of trust is a contract that can be made to be retroactive. Therefore, the bankruptcy court erred when it held that 2425 WL, LLC's claim was fraudulent because Ali Choudhri did not have authority to execute the deed of trust in 2018 because he did have authority and Texas law supported his ability to execute the deed of trust in 2021.

### D. Consideration was given in the form of a credit against the purchase price of the building.

In its order disallowing 2425 WL, LLC's Claim No. 7, the bankruptcy court held that "[t]here could have been no consideration paid by the claimant for the Promissory Note or the Deed of Trust as alleged in Claim 7-2. The claimant received funds and did not and could not have paid any monies in the subject transaction." ROA.14.

However, there was adequate consideration in a promise to pay. As shown *supra*, 2425 WL, LLC did give up something for this transaction. 2425 WL, LLC forwent $14,730,332.38 due and owing it in the form the "Seller Credit to Buyer." ROA.391. In exchange, Galleria 2425 Owner, LLC made a promise to pay that amount where a vendor's lien arose from the transaction and later a deed of trust and promissory note memorialized the transaction. ROA.161.

A promise to pay is good consideration. "It is quite elementary that the promise of one party is a valid consideration for the promise of the other party." *Texas Farm Bureau Cotton Ass'n v. Stovall*, 113 Tex. 273, 253 S.W. 1101, 1105 (Tex. 1923); *Song v. 4170 & 4231 & 4271 Altoona Drive Holdings Ltd. P'ship*, 616 F. App'x 645, 648 (5th Cir. 2015). Here, Galleria 2425 Owner, LLC received the property and 2425 WL, LLC received a promise to pay the "Seller Credit to Buyer" amount in exchange. ROA.391. Therefore, contrary to the bankruptcy court's opinion, there was consideration for the transaction.

In sum, a vendor's lien arose in 2018 where 2425 WL, LLC forwent $14,730,332.38 because Galleria 2425 Owner, LLC was that amount short of the total required amount and 2425 WL, LLC extended the "Seller Credit to Buyer" in that amount. ROA.391. Thereafter, in 2021, Ali Choudhri gained authority to execute the deed of trust and promissory note memorializing this vendor's lien and where good consideration was had because Galleria 2425 Owner, LLC received property in exchange for a promise to pay. ROA.148, 382. Therefore, these transactions were not fraudulent, and the bankruptcy court erred when it found they were in the order disallowing 2425 WL, LLC's Claim No. 7 and the district court erred by affirming the order. Accordingly, this Court should reverse the bankruptcy court's order disallowing 2425 WL, LLC's Claim No. 7.

# CONCLUSION

This Court should hold that the bankruptcy court erred when it disallowed 2425 WL, LLC's claim after its plan confirmation order and reverse the bankruptcy court's Order Disallowing Proof of Claim and Referral to United States Attorney dated September 9, 2026. Alternatively, for the reasons described *supra*, this Court should hold that 2425 WL, LLC's claim was not false and the deed of trust underlying the claim was not fraudulent and reverse the bankruptcy court's Order Disallowing Proof of Claim and Referral to United States Attorney dated September 9, 2026.

Respectfully submitted,

/s/*Michael Sankey*
Michael Sankey
Texas State Bar No. 24097156
Michael Sankey, PLLC
1725 Hughes Landing Blvd., 11th Floor
P.O. Box 9281
The Woodlands, Texas 77387
(832) 885-9030
michael@texesquire.com
**Attorney of record for**
**Appellant 2425 WL, L.L.C.**

# CERTIFICATE OF SERVICE

I certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on June 29, 2026, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

/s/*Michael Sankey*
Michael Sankey
**Attorney of record for**
**Appellant 2425 WL, L.L.C.**

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 6,177 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman size 14 font.

/s/*Michael Sankey*
Michael Sankey